Green, J.
delivered the opinion of the'court.
On the 3d day of March, 1837, the ‘ complainant drew a bill of exchange on John W. Tilford of Philadelphia, payable to Caleb C. Norvell, for $3200, due four months after date, for which Norvell paid him the money. Some time after this fbill was drawn, Yan Wyck placed in the hands of Norvell two notes; one drawn by Stephen B. Jones, at four months from the 6 th of February, 1837, for $2500, and the other drawn by Gordon & Berry at four months, from the 20th of January, 1837, for $844. These notes, Norvell proves, were placed in his hands without solicitation on his part, (as he required no collateral security for the payment of the draft he had purchased,) to be collected when due, and in the event Yan Wyck should be absent, (which he spoke of as probable,) the proceeds were to be remitted to Philadelphia to pay said draft. On the 12 th or 13th of April, Yan Wyck and Norvell met at the Union Bank; news of Tilford’s failure had just arrived, and Yan Wyck proposed to Norvell, to exchange the notes for Norvell’s order on Til-ford for the said draft. To this arrangement Norvell assented, as he owed the Bank and could use the notes, if the Bank considered them good. He went to his office and got the notes, and laid them before the president and cashier of the Bank for discount. The Bank was willing to discount the notes, and credit Norvell’s account by the proceeds; but after dinner, as Norvell was about to enter the cashier’s room to learn the answer to his proposition, he met Van Wyck, who told him he could not permit him to have the notes unconditionally; that possibly, his draft on Tilford might be negotiated, and would not be returned on his order, and that the notes were to be held by Norvell subject to Van Wyck’s claim, in case Norvell’s order should not have the effect of restoring his draft.
In consequence of the annexation of this condition by Van Wyck, the cashier caused Norvell to execute his own note, without endorsement, and entered the notes placed in Norvell’s hands by Yan Wyck to the debit of “suspense account,” and also upon the collection-book of the Bank. Norvell’s order on Tilford was drawn after dinner, and after Van Wyck had annexed the condition to Norvell’s use of the notes. The order was placed in the hands of the assistant cashier of the Bank and by him forwarded *194 to Philadelphia, but was returned, Tilford failing to give up the draft, which has since been paid ,by Van Wyck. The notes have been collected by the bank, and the proceeds credited to Norvell’s debt, which he owed the bank before the transactions in reference to them occurred. This bill is brought for the proceeds of these notes, and the question is, under the circumstances, whether Van Wyck or the Bank has the better title to them. It is not denied, but that the notes in controversy up to the 12th of April, 1837, the time the foregoing transactions occurred, were the property of Van Wyck, nor is it questioned but that Norvell’s debt, to which the proceeds of these notes have been applied, existed before that time, and that no new consideration was advanced or paid to him, at the time the notes were delivered to the Bank. The only question of fact, upon this part of the case, is, whether Van Wyck did not part with his title to the notes unconditionally, and beyond his power of recall, at the first interview with Norvell, and whether the Bank did acquire an absolute title to the notes, before the second interview,-at which Van Wyck annexed the condition to Norvell’s use of them. Norvell proves, that his order, in consideration of which he was to have the notes, was not executed until the second interview, and after the condition had been attached to his use of the notes, and that, although the directors were willing to discount the notes, yet they were not in fact discounted, but his own note taken and discounted, and the notes in question were deposited, as collateral security. From all the facts proved, it appeared, that after the first conversation between Van Wyck and Norvell, until they met again, in the afternoon in Bank, no definite agreement had been made, either between Van Wyck and Norvell, or between Norvell and the Bank. Van Wyck had proposed to give the notes for an order on Tilford for his draft; Norvell assented to the proposition, but did not execute the order, nor consider the notes beyond Van Wyck’s control. True, he thought there would be no doubt of his ownership of the_notes, and anxious to settle his debt in Bank, he hastened to get the notes, and submit them for discount in payment of the amount he owed. The Bank did not act upon the proposition. The directors were willing to discount the notes; but it was not done; no entries were made in the books until after Van Wyck had annexed the condition, and then entries were made consistent with Van Wyck’s claim and ownership of the notes. It is, therefore, clear, that *195 Van Wyck did not part, absolutely, with his right to the notes, and that the case rests upon his definite contract with Norvell, that he was to- be entitled to them, should the draft be returned by Tilford in obedience to his order. The question upon this state of facts, is, whether, although the Bank might have had no notice of the condition in the contract between Norvell and Van Wyck, it acquired a title to the notes?
It is settled as a general rule, that a holder coming fairly by a bill or note, has nothing to do with the transaction between the original parties, and if negotiable paper is transferred for a valuable consideration, and without notice of any fraud, the right of the holder shall prevail against the true owner. This principle, is an exception to the general rule of law, which is, that the true owner is entitled to his property, wheresoever he may find it. But with a view to favor the credit and circulation of commercial paper, it has been deemed consistent with sound policy to adopt, in relation to such paper, this exception as a rule. Because it seems reasonable, that the innocent holder having incurred loss by giving credit to the paper, and having paid a fair equivalent, is entitled to protection. But when the paper has been received in payment of, or as security for a pre-existing debt, no such reason exists. Such debt may be a good consideration as between the holder and the individual from whom he received the paper, but it can be no reason why he should hold it against the true owner. If he had parted with no value, nor incurred any new responsibility on the credit of the paper he received, his situation is rendered no worse by surrendering it to the true owner, than if he had not received it. It is not, therefore, the case, where two persons have equal equities, as is the case, where the holder makes the advance on the credit of the paper. In the case of Kimbro vs. Lytle, 10 Yer. 417, this court refers to, and approves the case of Bay vs. Coddington, 20 John. Rep. 637, in which it is held, that a holder who receives a note or bill in payment of or security for an antecedent debt, is not entitled to it, against the true owner. That case is, in principle, precisely like the one now before the court. There, Randolph and Savage had taken the notes from the purchasers of a vessel belonging to Bay, payable to themselves. These notes were delivered to Coddington in discharge of pre-existing liabilities, they had incurred for Randolph and Savage, who had become insolvent. Bay filed his bill for the notes as his property. *196 The court decreed that he was entitled to them, and ordered áíl account. The objection, therefore, made by the counsel for the Bank cannot prevail, namely, that as the parties to these notes, are not seeking to set up any equity against them, the principle o'f these cases does not apply. In the case of Bay vs.' Coddington, the complainant was no party to the notes; they had been taken by his agents, from the purchaser of his vessel for the price agreed to be given. They were his property; he had an equitable right to them, against which, the holder could not set up an equal equity, because he had not received them in the due course of trade, for value advanced at the time. So here, it is not denied but that these notes belonged to Van Wyck. They were received by the bank as collateral security for a precedent debt. If the Bank is permitted to retain the proceeds, it will be gainer by so much, and Van Wyck will sustain a clear loss of that amount. If Van Wyck obtain the proceeds, he gets but-his own, and the Bank is no loser. Its claim upon Norvell is in statu quo; having advanced to him no new consideration, on the reception of these notes, it will be in no worse situation, than if they had not been received. It is insisted, however, that the facts herein before stated, are proved only by one witness; and that as the answer contains a direct denial of them, there should be two wiinesses, or corroborating circumstances, in addition to Norvell’s testimony. This rule, has no application to a case like the present. The defendant here is a corporation. It answers by its corporate seal. It cannot swear to the answer, so as to oppose the oath of the defendant, to the oath of one witness, and thereby create the reason for two witnesses. Its answer does no more, therefore, than to create an issue in pleading between the parties. 6 Paige’s Rep. 54. But it is said, the cashier of the Bank has sworn to the answer. It may be replied, the cashier is no party to this suit, tie is an entire stranger to the proceeding; asmuch so, as.he would be to a suit between two of his neighbors, the facts in relation to which he might happen to know. His affidavit in such a case, would have just as much efficacy as it can have in this case.
But, if other testimony were necessary, it is' not wanting. James Woods, a director of the Bank, states,. that the notes in question, were laid before a portion of the directors, of whom he was one, by Norvell, for discount; and that they were willing to discount them, but that after the directors had dispersed, himself re *197 maining in the room,- Van Wyck entered it,' and made' some remarks about a claim he had on them, but said, he had a1 negotiation on foot, by which, he' had little doubts the notes would become Norvell’s property absolutely/ This of itself is evidence, that the notes had not then been transferred by Van Wyck to Norvell absolutely, and the time, at which Mr. Woods states this transaction^ to have occurred in' the directors’ room of the Bank, corroborates Norvell’s account of the second interview with Van Wyck, when at the Bank they met after dinner and Van Wyck attached the condition, that the notes were to become Norvell’s property,only in the event that his order should produce the return to-Van Wyck of his draft.
It is true, Mr'. Woods says,- that the manner'in which Van Wyck-spoke of his claim to the notes, made it appear a small matter.It appeared a small matter, because of the confidence that Van Wyck and Norvell and the officers of the Bank entertained that Norvell’s order would produce the return of Van Wyck’s draft,' Upon which event the notes were to be Norvell’s, absolutely; and it" is, doubtless owing to the fact, that this strong confidence in the effect of the order, making Van Wyck’s claim- to the -notes appear' a small matter, .that the existence of that claim has escaped Mjv Somm'erville’s memory; still, we cannot fail to perceive,- that the' entries made by hi>m- in the books of the Bank, were the natural effect of that claim,- and were produced by it. If no such claim had existed, the notes would have been negotiated, they having been offered, and the directors having passed them for that purpose, as it-would have greatly simplified the transaction.-As Norvell’s own note and not the notes in dispute were negotiated, and these were taken as collateral security, and were entered on the collection book and to the debit of “suspense account” we must infer; (in view of the evidence of Mr. Woods,) that such a change of the entries,from what they would have been had nothing, interposed to prevent their negotiation, was made in con'sequence of Van Wyck’s claim; We do not refer to these facts, as necessary)to a- decision of fhe pause. For in this case, as there is.no oath of the defendant to oppose- the path-of on,e witness, the evidence of one creditable' witness is sufficient to prove the facts-alleged in the bill; and, as the’ nptes were, not taken by the Bank from Norvell in the due course’ of tradeTor value advanced at the time, but as collateral security &r an antecedent debt, whether the Bank had- notice of Van* *198 'Wyck’s claim or not, it has no equity to the notes as against the true owner. The counsel for the Bank insists that Van Wyck was not legally bound to pay the draft, and therefore, Norvell’s right to 'the notes was absolute. It is true, it now appears that Gill & Co. has no title to'the draft. But they were the holders, and apparent ’owners at the time it was presented by their agent for payment; Van Wyck had no-means of knowing, and did not know, that it •had not been transferred -to -them, in the due course of trade for value. There were no grounds, therefore, legal or equitable, known -to him, upon which he could have resisted the payment. Upon the whole, we think he is entitled to the proceeds of the notes in controversy, and therefore order an account. Let the decree be ¿reversed, and a decree for complainant entered.